**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Pim Shih,<br><br>                              Plaintiff,<br><br>        -against-<br><br>Artists & Fleas Chelsea Market and<br>Jamestown LP,<br><br>                              Defendants. | **1:25-cv-07671 (JPC) (SDA)**<br><br>**REPORT AND RECOMMENDATION** |

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE JOHN P. CRONAN, UNITED STATES DISTRICT JUDGE:**

*Pro se* Plaintiff Pim Shih ("Plaintiff" or "Shih") brings this action alleging that he was discriminated against on the basis of his race, color, religion and national origin as a customer of the Artists & Fleas marketplace in Chelsea Market in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. 2000a ("Title II"),  42 U.S.C. § 1981 ("Section 1981") and the New York State Human Rights Law, N.Y. Exec. L. § 296 ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq*., and alleging intentional infliction of emotional distress ("IIED") and negligent hiring claims. (Compl., ECF No. 1.) Pending before the Court is a motion by Defendant Jamestown LP ("Moving Defendant" or "Jamestown") to dismiss the Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim.[1] (2/23/26 Not. of Mot., ECF No. 13.)

For the reasons set forth below, it is respectfully recommended that the Moving Defendant's motion be GRANTED IN PART and DENIED IN PART.

---

[1] Defendant "Artist & Fleas Chelsea Market" has not yet appeared in this action.

**FACTUAL BACKGROUND**[2]

Shih is a Chinese American and practicing Christian. (Compl. at PDF p. 1.) On August 26, 2025, Shih entered Artists & Fleas marketplace in Chelsea Market as a customer. (*See id.*) The on-site manager of Artist & Fleas confronted Plaintiff directly and without provocation stated, "I hate Asian people." (*Id.* at PDF p. 2.) The manager then expelled Shih from the premises. (*Id.*) Shih "experienced shock, humiliation, embarrassment, and intimidation" because of the incident. (*Id.* at PDF p. 4.) In the following days, he also "experienced emotional distress, anxiety, and fear, including difficulty sleeping and reluctance to visit Chelsea Market." (*Id.*)

The Complaint alleges that Jamestown is the "parent and/or managing entity that owns and controls Chelea Market." (Compl. at PDF p. 1.) The Complaint further alleges that Jamestown is responsible for the "overall management" of its tenants, including Artists & Fleas. (*Id.*)

**PROCEDURAL HISTORY**

Shih filed his Complaint on September 16, 2025. (*See* Compl.) On February 23, 2026, Jamestown filed the motion to dismiss that is now before the Court. (*See* 2/23/26 Not. of Mot.) Plaintiff served his opposition on February 26, 2026, and the Moving Defendant filed its reply on March 12, 2026. (Pl.'s Opp., ECF No. 19;[3] Moving Def.'s Reply, ECF No. 18.)

**LEGAL STANDARDS REGARDING MOTIONS TO DISMISS *PRO SE* COMPLAINTS**

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to

---

[2] For purposes of the pending motion to dismiss, the Court accepts Plaintiff's factual allegations as true and draws all reasonable inferences in his favor. *See City of Providence v. Bats Glob. Mkts., Inc.*, 878 F.3d 36, 48 (2d Cir. 2017).

[3] As the ECF docket reflects, Plaintiff's opposition was not filed to the ECF docket until March 13, 2026.

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court "must accept as true all of the allegations contained in a complaint[,]" but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

Where a plaintiff is proceeding *pro se*, the Court must be mindful that the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Complaints filed by *pro se* litigants "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (cleaned up) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). Nevertheless, a *pro se* plaintiff "must still plead enough facts to state a claim to relief that is plausible on its face." *Owens v. City of New York*, No. 14-CV-00966 (KBF), 2015 WL 715841, at *1 (S.D.N.Y. Feb. 19, 2015) (citing *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). Moreover, *pro se* plaintiffs "cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. N.Y. State Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

Jamestown seeks to dismiss each of the claims in the Complaint, which are addressed below.

I.      **Discrimination Claims Under Title II And Section 1981**

A.      **Legal Standards**

Title II provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). Its 'overriding purpose . . . is to remove the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public.'" *Macer v. Bertucci's Corp.*, No. 13-CV-02994 (JFB) (ARL), 2013 WL 6235607, at *6 (E.D.N.Y. Dec. 3, 2013). "To bring a claim under Title II, a plaintiff must 'allege facts showing (1) that he was deprived of equal use and enjoyment of a place of public accommodation[4] and (2) facts which demonstrate discriminatory intent.'" *Shih v. Broadway League*, No. 23-CV-08035 (JPC) (RWL), 2024 WL 3928618, at *4 (S.D.N.Y. Aug. 20, 2024), *report and recommendation adopted*, 2024 WL 4719586 (S.D.N.Y. Nov. 8, 2024) (quoting *Akyar v. TD Bank U.S. Holding Co.*, No. 18-CV-00379, 2018 WL 4356734, at *5 (S.D.N.Y. Sept. 12, 2018)).

Section 1981 provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). "In order to establish a claim under

---

[4] A place of "public accommodation" is an establishment either affecting interstate commerce or supported by state action that falls into one of the following categories: "(1) a lodging for transient guests located within a building with more than five rooms for rent; (2) a facility principally engaged in selling food for consumption on the premises, including such facilities located within retail establishments and gasoline stations; (3) any place of exhibition or entertainment; (4) any establishment located within an establishment falling into one of the first three categories, and which holds itself out as serving patrons of that establishment; or (5) any establishment that contains a covered establishment, and which holds itself out as serving patrons of that covered establishment." *Bishop v. Henry Modell & Co.*, No. 08-CV-07541 (NRB), 2009 WL 3762119, at *12 (S.D.N.Y. Nov. 10, 2009) (citing 42 U.S.C. § 2000a(b)).

4

§ 1981, a plaintiff must allege facts, which if proven to be true, would establish the following three elements: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate against the plaintiff on the basis of his or her race; and (3) that the defendant discriminated in connection with one of the statute's enumerated activities." *Alexander v. Private Protective Servs., Inc.*, No. 19-CV-10004 (JPO) (SDA), 2021 WL 8445829, at *3 (S.D.N.Y. Nov. 24, 2021), *report and recommendation adopted*, 2022 WL 1567447 (S.D.N.Y. May 18, 2022). Section 1981 prohibits only discrimination based on race, *see Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998); otherwise, the same standard for discrimination claims applies to both claims brought under Section 1981 and Title II. *See Marks-Ellis v. NYU Langone Health Sys.*, No. 23-CV-09618 (KPF), 2025 WL 1784814, at *9 (S.D.N.Y. June 27, 2025); *see also Lizardo v. Denny's, Inc.*, 270 F.3d 94, 106 (2d Cir. 2001).

### B.    Analysis

Plaintiff alleges that, while he was in the Artists & Fleas marketplace, the on-site manager confronted him directly and stated, "I hate Asian people." (Compl. at PDF p. 2.) Immediately after making this remark, Plaintiff alleges that the manager ordered Plaintiff to leave the premises and thereafter Plaintiff was expelled from Artist & Fleas and deprived of the ability to make purchases. (*Id.*) Rule 12(b)(6) requires courts to "draw all reasonable inferences in [the non-movant's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)). Accepting Plaintiff's allegations as true, Plaintiff plausibly alleges

discrimination on the basis of race.[5] *See Feacher v. Intercontinental Hotels Grp.*, 563 F. Supp. 2d 389, 405 (N.D.N.Y. 2008) (allegations that restaurant manager subjected plaintiffs to racial slurs and threw their omelets in trash before they were able to eat them established "the classic example of racial discrimination that § 1981 . . . [was] enacted to combat."); *Shen v. A&P Food Stores*, No. 93-CV-01184 (FB), 1995 WL 728416, at *3 (E.D.N.Y. Nov. 21, 1995) (allegations of verbal abuse focused on plaintiffs being Chinese by supermarket cashier and manager sufficient to state claim under § 1981). Nonetheless, Jamestown argues that Plaintiff's claims against it should be dismissed because Jamestown does not own Chelsea Market or have control over the actions of any tenants, including Artists & Fleas,[6] and Plaintiff has not plausibly alleged that any actions by Jamestown were motivated by racial (or religious) animus. (*See* Moving Def.'s Mem., ECF No. 14, at 5-6.) The Court disagrees with respect to the race discrimination claims against Jamestown.

---

[5] In his Complaint, Plaintiff alleges religious discrimination based upon the contention that his "exclusion [from the marketplace] had religious undertones, as Plaintiff is openly Christian." (Compl. at PDF p. 2.) The Court finds that the comment attributed to the on-site manager about his hatred of Asian people, without more, does not plausibly allege religious discrimination.

[6] Jamestown submitted with its motion to dismiss a Property Management Agreement between Manhattan Chelsea Market LLC and Jamestown (*see* Ex. A to Brown Decl., ECF No. 15-1) in support of Jamestown's argument that it does not own Chelsea Market or have control over the actions of any tenants, including Artists & Fleas (*see* Moving Def.'s Mem. at 5) and requests the Court to take judicial notice of the Property Management Agreement. The Court declines to do so. "It is well-settled that the materials a court may consider when deciding a motion to dismiss under Rule 12(b)(6) are limited." *ATAX New York, Inc. v. Canela #1*, No. 21-CV-05916 (JPC), 2022 WL 3018151, at *4 (S.D.N.Y. July 29, 2022). A court may consider "matters of which judicial notice may be taken[,]" *Delgado v. City of New York*, No. 19-CV-06320 (JPC), 2021 WL 2473817, at *1 (S.D.N.Y. June 17, 2021) (citing *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)), which include, for example, public records. *See Mandarin Oriental, Inc. v. HDI Glob. Ins. Co.*, No. 23-CV-04951 (JPC), 2024 WL 4252562, at *4 (S.D.N.Y. Sept. 19, 2024). The Property Management Agreement offered by the Moving Defendant is not mentioned in the Complaint and is not a matter of public record. Accordingly, the Court disregards the Property Management Agreement in making its recommendations herein.

Plaintiff alleges that Jamestown is the parent and/or managing entity that owns and controls Chelsea Market and that Jamestown was responsible for the overall management of the property and its tenants, including Artists & Fleas Chelsea Market. (Compl. at PDF pp. 1, 3.) Plaintiff also alleges that Jamestown employed, supervised and retained the store manager. (*Id*. at PDF p. 4.) Assuming these allegations to be true, the Court cannot conclude that "there is no plausible basis for any liability against Jamestown" as Jamestown contends. (*See* Moving Def.'s Mem. at 5-6 (citing *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 75, 80 (2d Cir. 2021)). Moreover, the actions of the store manager can be imputed to Jamestown for purposes of Title II and Section 1981 liability. *See Bishop v. Best Buy, Co. Inc.*, No. 08-CV-08427 (LBS), 2010 WL 4159566, at *6 (S.D.N.Y. Oct. 13, 2010) (plaintiff plausibly alleged facts to state Section 1981 claim against Best Buy for allegedly discriminatory acts of employees acting within scope of employment under doctrine of *respondeat superior*), *aff'd sub nom. Bishop v. City of New York*, 518 F. App'x 55 (2d Cir. 2013).

Accordingly, the Court recommends that the Moving Defendant's motion to dismiss Plaintiff's Title II and Section 1981 claims for race discrimination be denied. *See Boggs v. Home Depot, Inc.*, No. 21-CV-06750 (PMH), 2023 WL 1779690, at *4 (S.D.N.Y. Feb. 6, 2023) (denying motion to dismiss Section 1981 claim when plaintiff alleged John/Jane Does who impaired their rights under a contract based on race were individual employees and managers of defendant).

## II.    **Discrimination Claims Under The NYSHRL**

### A.    **Legal Standards**

The NYSHRL provides, in relevant part, "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or

employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof[.]" N.Y. Exec. Law § 296(2)(a). Like Title II, at the pleading stage, the NYSHRL requires a plaintiff to plausibly allege facts giving rise to an inference of discrimination based on the plaintiff's protected characteristics. *See Jones v. Beth Israel Hosp.*, No. 17-CV-03445 (GHW), 2018 WL 1779344, at *12 (S.D.N.Y. Apr. 12, 2018).

Under the NYSHRL an individual may be liable for intentional discrimination "as either an employer . . . or as an 'aider and abettor.'" *Krause v. Lancer & Loader Grp., LLC*, 40 Misc. 3d 385, 398 (Sup. Ct., N.Y. County, 2013) (citing N.Y. Exec. Law §§ 296 (1) and (6)). However, "vicarious liability is not available in cases involving [NYSHRL] discrimination," and "a plaintiff can recover against an employer only if [he] demonstrates that the employer acquiesced in the discriminatory conduct or subsequently condoned it." *Charlier v. 21 Astor Place Condo.*, No. 22-CV-05903 (LTS), 2024 WL 4026253, at *6 (S.D.N.Y. Sept. 3, 2024) (cleaned up). "Condonation . . . contemplates a knowing, after-the-fact forgiveness or acceptance of an offense." *Id*. (citing *In re Father Belle Cmty. Ctr. v. N.Y.S. Div. of Hum. Rts.*, 221 A.D.2d 44, 53 (4th Dep't 1996)).

### B.    Application

In Plaintiff's memorandum in opposition to the pending motion to dismiss, he asserts that, after the incident in which he was expelled from the marketplace, Plaintiff sent detailed emails to Jamestown on two occasions regarding the incident and that he referenced a complaint that Plaintiff filed with the New York Division of Human Rights in those emails. (Pl.'s Opp. at PDF p. 9.) Plaintiff also alleges that, after receiving these emails, Jamestown "failed to take any

8

corrective action—no investigation, no discipline of the offending manager, no contact with Plaintiff, and no implementation of remedial measures." (*Id*.) Because Plaintiff is proceeding *pro se*, the Court may consider new facts raised in opposition papers to the extent that they are consistent with the Complaint, treating the new factual allegations as amending the original complaint. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."). Considering Plaintiff's new allegations, the Court finds that Plaintiff plausibly has alleged that Jamestown subsequently condoned the discriminatory conduct. Accordingly, the Court recommends that the Moving Defendant's motion to dismiss the NYSHRL claim be denied.

## III.    IIED Claim

### A.    Legal Standards

To state an IIED claim for IIED under New York law, a plaintiff must plausibly allege "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019) (quoting *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115, 121 (1993)); *see also Bordes v. Deveaux*, No. 23-CV-7430 (JPC) (JW), 2025 WL 1042323, at *5 (S.D.N.Y. Feb. 26, 2025), *report and recommendation adopted*, 2025 WL 831697 (S.D.N.Y. Mar. 14, 2025). IIED is a "highly disfavored [tort] under New York law." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Chanko v. Am. Broad. Companies Inc.*,

27 N.Y.3d 46, 56 (2016) (cleaned up). "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." *Zanfardino v. City of New York*, 230 F. Supp. 3d 325, 337 (S.D.N.Y. 2017) (citing *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)).

"Under New York law, an employee's tortious acts fall within the scope of his employment if 'done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions.'" *Rich*, 939 F.3d at 130 (quoting *Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979)). "But '[a]n employer will not be held liable under [*respondeat superior*] . . . for actions which were . . . undertaken by the employee for wholly personal motives.'" *Id.* (quoting *Galvani v. Nassau Cty. Police Indemnification Review Bd.*, 242 A.D.2d 64, 68 (2d Dep't 1998)).

## B.    Application

Plaintiff alleges that the "extreme and outrageous conduct of the manager" caused him "humiliation, emotional distress, anxiety, and reputational harm." (Compl. at PDF p. 4). These conclusory allegations are insufficient to satisfy the first element of an IIED claim. *See Shih*, 2024 WL 3928618, at *11 (dismissing an IIED claim where the plaintiff faced "humiliation" and "anxiety" after his show was rejected); *see also Elmowitz v. Executive Towers at Lido, LLC*, 571 F. Supp.2d 370, 379 (E.D.N.Y. July 22, 2008) (dismissing IIED claim against property manager who photographed tenant at close range, shouted derogatory remarks and struck tenant with telephone). Thus, to the extent Plaintiff is seeking to hold Jamestown liable for alleged acts by an employee acting within the scope of his employment, he fails to state a claim. *See Toomer v. Cellco P'ship*, No. 11-CV-07515 (PAE), 2012 WL 2953831, at *10 (S.D.N.Y. July 20, 2012) ("[T]o state a claim for respondeat superior against [the employer]" the plaintiff "must plead an

10

underlying tort against [the employee]."). Accordingly, the Court recommends that Plaintiff's IIED claim be dismissed.

### IV.    Plaintiff's Claim For Negligent Hiring, Supervision And Retention Claim

#### A.    Legal Standards

To state a claim for negligent hiring, training, supervision, or retention, a plaintiff must show, in addition to the elements required for a claim of negligence,[7] "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Rich*, 939 F.3d at 129 (citing *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)). For such a claim, "[t]he employee also must not be acting within the scope of his or her employment; [for] in that situation the employer [would] only be liable . . . vicariously under the theory of *respondeat superior*, [and] not for negligent supervision or retention." *Id.* at 129-30 (citing *Gray v. Schenectady City Sch. Dist.*, 86 A.D.3d 771 (3d Dep't 2011).

#### B.    Application

Plaintiff alleges that "by employing, supervising, and retaining a manager" who engaged in discriminatory conduct, Jamestown engaged in negligent hiring, training, supervision, and retention. (Compl. at PDF p. 4.) Jamestown argues that this claim should be dismissed because Plaintiff fails to allege an employment relationship between Jamestown and the on-site manager fails to allege facts regarding the hiring, training or supervision of the manager; and has not

---

[7] To state a negligence claim under New York law, "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Charlier*, 2024 WL 4026253, at *7 n.8 (quoting *Solomon v. City of N.Y.*, 66 N.Y.2d 1026, 1027 (1985)).

alleged that Jamestown knew or should have or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence. (Moving Def.'s Reply at 8-9.) Plaintiff has not alleged any facts regarding other conduct by the manager or Jamestown's knowledge regarding discriminatory conduct prior to the incident at issue, and thus, has not plausibly alleged the second element of a negligent hiring, training, supervision, or retention claim. *See Charlier*, 2024 WL 4026253, at *8. Thus, to the extent Plaintiff asserts a negligence claim for conduct falling outside the scope of the manager's employment, *see Rich*, 939 F.3d at 130 (noting that plaintiff may allege both vicarious liability and negligent hiring and supervision, "leaving it up to the jury to decide the scope of employment question"), he has not stated a plausible claim for relief. Accordingly, the Court recommends that Plaintiff's negligent hiring, supervision and retention claim be dismissed.

## V.      Leave To Amend

In his opposition memorandum, Plaintiff requests leave to amend "if the Court finds any deficiency in the Complaint." (Pl.'s Opp. at PDF p. 11.) As set forth above, the Court finds that two claims are deficient and should be dismissed, *i.e.*, Plaintiff's IIED claim and negligent hiring, supervision and retention claim. (*See* Discussion Sections III.B. & IV.B.)

The Second Circuit has counseled strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims. *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190-91 (2d Cir. 2015). However, "[l]eave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). Ultimately, "it is within

the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019).

The Court recommends that Plaintiff be granted leave to amend his negligent hiring, supervision and retention and IIED claims, since he has not yet had the benefit of a ruling with respect to the defects of such claims (assuming the recommendation to dismiss such claim is adopted).

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that Jamestown's motion to dismiss (ECF No. 13) be GRANTED IN PART and DENIED IN PART. Specifically, it is recommended that Jamestown's motion to dismiss be granted with respect to Plaintiff's IIED claim and negligent hiring, supervision and retention claim and that the motion otherwise be denied. In addition, Plaintiff should be given the opportunity to amend his IIED and negligent hiring, supervision and retention claims against Jamestown if he believes he can plead facts supporting such claims.

Dated:      New York, New York
            July 3, 2026

_____
STEWART D. AARON
United States Magistrate Judge

\*          \*          \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding

three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Cronan.

**THE FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).